IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

ROCK HILL DIVISION

| | |
|---|---|
| 3D SYSTEMS, INC., | Civil Action No.  0:12-cv-03323-TLW |
| Plaintiff, | |
| v. | |
| FORMLABS, INC. and KICKSTARTER, INC., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**
**ON BEHALF OF**
**DEFENDANTS FORMLABS, INC. AND KICKSTARTER, INC.**

# TABLE OF CONTENTS

**Page**

I.    NATURE OF THE CASE ...............................................**Error! Bookmark not defined.**

II.   FACTS ......................................................................................................... 2

    A.    Formlabs ............................................................................................ 2

    B.    Kickstarter ......................................................................................... 3

    C.    Formlabs' Project .............................................................................. 5

    D.    3D Systems' Lawsuit ......................................................................... 7

III.  ARGUMENT ................................................................................................ 8

    A.    There Is No Personal Jurisdiction Over Defendants In This District .................... 8

        1.    It is Plaintiff's Burden to Establish Personal Jurisdiction ......................... 8

        2.    Defendants Are Not Subject to General Personal Jurisdiction in this District .......................................................................................... 9

        3.    Defendants Are Not Subject to Specific Personal Jurisdiction in this District ......................................................................................... 12

            a.    Defendants do not "purposefully direct" activities at South Carolina ................................................................. 13

            b.    3D System's infringement claim does not "arise out of" or "relate to" any alleged activity of the Defendants in this District ...................................... 17

            c.    It would be unreasonable and unfair to force Defendants to litigate in this District. ........................... 17

    B.    The Complaint Should Be Dismissed For Improper Venue ................................ 18

    C.    The Court Should Dismiss The Infringement Claims Under Fed. R. Civ. P. 12(b)(6) ............................................................ 19

        1.    The Legal Standard Under Rule 12(b)(6) ................................. 20

        2.    The Complaint Fails To State A Plausible Claim For Direct Infringement against Kickstarter ............................. 22

        3.    The Complaint Fails To State A Plausible Claim For Direct Infringement against Formlabs ................................. 26

        4.    3D Systems has Failed to Plead a Plausible Claim for Indirect Infringement ..................................................... 28

D.    If It Does Not Dismiss The Complaint, The Court Should Transfer This Case To The United States District Court For The District Of Massachusetts On The Alternative Grounds Of Forum Non Conveniens ........... 29

IV.    CONCLUSION .................................................................................................................. 34

## TABLE OF AUTHORITIES

**Page**

### CASES

*Adiscov, LLC v. Autonomy Corp.*, 762 F. Supp. 2d 826 (E.D. Va. 2011) ...............................21

*Akro Corp. v. Luker*, 45 F.3d 1541 (Fed. Cir. 1995) ..................................................17

*Angela Adams Licensing, LLC v. Dynamic Rugs, Inc.*,
    463 F.Supp.2d 82, 85 (D. Me. 2006) ............................................................16

*Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*,
    480 U.S. 102 (1987)................................................................................9

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...........................................................20, 27

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)....................................20, 24, 27

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994) ...................13

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)................................................9

*Campbell Pet Co. v. Miale*, 542 F.3d 879 (Fed. Cir. 2008)........................................10

*Conley v. Gibson*, 355 U.S. 41 (1957) ...............................................................20

*Dawson Chemical Co. v. Rohm and Haas Co.*, 448 U.S. 176 (1980) .........................28

*Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518 (1972)................................28

*DeLay & Daniels, Inc. v. Allen M. Campbell Co.*, 71 F.R.D. 368 (D.S.C. 1976) ....................32

*Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*,
    297 F.3d 1343 (Fed. Cir. 2002)................................................................12

*DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006)..............................29

*Eidos Commc'ns LLC v. Skype Techs.*, 686 F. Supp. 2d 465 (D. Del. 2010) ...........................21

*Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d, 1344 (Fed. Cir. 2003) ....................................12, 13

*Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343 (Fed. Cir. 2000) ...................................15, 22

*Fairchild Semiconductor Corp. v. Nintendo Co.*, 810 F. Supp. 173 (D.S.C. 1992) .................32

*Fieldturf Int'l, Inc. v. Sprinturf, Inc.*, 433 F.3d 1366 (Fed. Cir. 2006).......................................25

*Fifth Market, Inc. v. CME Group, Inc.*, C.A. No. 08-520 GMS,
    2009 WL 5966836 (D. Del. May 14, 2009)......................................................21

*Figgie Intern., Inc. v. Destileria Serralles, Inc.*, 925 F. Supp. 411 (D.S.C. 1996).....................30

*Foster v. Arletty 3 S.A.R.L.*, 278 F.3d 409 (4th Cir. 2002) .......................................................12

*Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222 (1957) .........................................18

*GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479 (Fed. Cir. 1996) ...............8, 15

*Gerber v. Canfield*, 315 F. Supp. 1175 (D.S.C. 1970)................................................................31

*Hanson v. Denckla*, 357 U.S. 235 (1958) ...................................................................................9

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) .......................8, 9, 10

*Hoffman v. Blaski*, 363 U.S. 335 (1960) ....................................................................................31

*HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304 (Fed. Cir. 1999) ................................................17

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.  (R+L Carriers,
    Inc. v. DriverTech LLC)*, 681 F.3d 1323 (Fed. Cir. 2012) ...........................................20

*In re Genentech, Inc.*, 566 F.3d 338 (Fed. Cir. 2009)................................................................32

*Int 'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ...................................................................9

*Joy Techs. v. Flakt, Inc.*, 6 F.3d 770 (Fed.Cir.1993) ..................................................................23

*Leroy v. Great Western United Corp.*, 443 U.S. 173 (1979) ......................................................18

*LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369 (Fed. Cir. 2000)................................12

*MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
    420 F.3d 1369 (Fed. Cir. 2005)..........................................................................................14

*Moldflow Corp. v. Simcon, Inc.*, 296 F. Supp. 2d 34 (D. Mass. 2003) .....................................14

*Nexsen Pruett, LLC v. Westport Ins. Corp.*, C.A No. 3:10-895-JFA,
    2010 WL 3169378 (D.S.C. Aug. 5, 2010) .......................................................................31

*Nuance Commc 'ns, Inc. v. Abbyy Software House*,
    626 F.3d 1222 (Fed. Cir. 2010)......................................................................8, 12, 13, 17

*Palmetto Pharmaceuticals LLC v. Astrazeneca Pharmaceuticals LP*,
    No. 2:11-cv-00807-SB-JDA, 2012 WL 484907 (D.S.C. Jan. 4, 2012) .......21, 22, 23, 26

*Palmetto Pharmaceuticals LLC v. Astrazeneca Pharmaceuticals LP*,
    No. 2:11-cv-00807-SB-JDA, 2012 WL 484848 (D.S.C. Feb. 14, 2012).........................21

*Porter v. Groat*, 840 F.2d 255 (4th Cir. 1988)...........................................................................18

*QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650 (E.D. Tex. 2007) ..................................14

*Realtime Data, LLC v. Stanley*, 721 F. Supp. 2d 538 (E.D. Tex. 2010) ....................................21

*Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246 (Fed. Cir. 2000)..............................14, 23

*Saudi v. Northrop Grumman Corp.*, 427 F.3d 271 (4th Cir. 2005) .............................................32

*Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260 (1961) .......................................................18

*Selective Ins. Co. of South Carolina v. Schremmer*,
    465 F. Supp. 2d 524 (D.S.C. 2006)...........................................................................................30

*Shamsuddin v. Vitamin Research Prods.*, 346 F. Supp. 2d 804 (D. Md. 2004) ........................16

*Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194 (Fed. Cir. 2003)...................................12

*Silver Ring Splint Co. v. Digisplint, Inc.*, 508 F. Supp. 2d 508 (W.D. Va. 2007) ....................16

*Southwest Equipment, Inc. v. Stoner & Co.*, C.A. No. 6:10-1765-HMH,
    2010 WL 4484012 (D.S.C. Nov. 1 2010).................................................................................32

*Stairmaster Sports/Medical Products, Inc. v. Pacific Fitness Corp.*,
    916 F. Supp. 1049 (W.D. Wash. 1994)....................................................................................11

*Stars for Art Prod. FZ, LLC v. Dandana*, LLC,
    806 F. Supp. 2d 437 (D. Mass. 2011) ......................................................................................12

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988).........................................................30, 32

*Stomp, Inc. v. Neato, LLC*, 61 F. Supp. 2d 1074 (C.D. Cal. 1999).............................................15

*Stonite Prods. Co. v. Melvin Lloyd Co.*, 315 U.S. 561 (1942)....................................................18

*Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823 (Fed. Cir. 2003).....................................30

*Stover v. O'Connell Assoc., Inc.*, 84 F.3d 132 (4th Cir. 1996) ....................................................12

*Technical Concepts L.P. v. Zurn Indus., Inc.*, No. 02-5150,
    2002 WL 31433408 (N.D. Ill. Oct. 31, 2002) .................................................................32

*Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*,
    395 F.3d 1275 (Fed. Cir. 2005)...................................................................................................8

*Ware v. Circuit City Stores, Inc.*, No. 4:05–CV–0156–RLV,
    2010 WL 767094 (N.D. Ga. Jan. 5, 2010) ..................................................................21

*Wild v. Subscription Plus, Inc.*, 292 F.3d 526 (7th Cir. 2002) ...................................................31

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).............................................9

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D. Pa. 1997)..........................................................................................15

## STATUTES AND RULES

Fed. R. Civ. P. 8(a)(2)....................................................................................................................20

Fed. R. Civ. P. 12(b)(2)................................................................................................8, 18, 29, 34

Fed. R. Civ. P.  12(b)(3) ...................................................................................18, 29, 34

Fed. R. Civ. P.  12(b)(6) ...........................................................................19, 20, 29, 34

28 U.S.C. § 1391(c) ................................................................................................18

28 U.S.C. § 1400(b) ....................................................................................18, 19, 30

28 U.S.C. § 1404(a) ....................................................................................29, 30, 31

28 U.S.C. § 1406(a) ................................................................................................18

28 U.S.C. § 271(a) ..................................................................................................13

37 C.F.R. 1.75(e) .....................................................................................................25

## <u>OTHER AUTHORITIES</u>

James WM. Moore et al., Moore's Federal Practice § 111.12(1)(c) ..........................................31

Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction 3rd § 3801...............19

Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction 3rd § 3826..............19

## I.    NATURE OF THE CASE

3D Systems, Inc. ("3D Systems") has brought a complaint against defendants Formlabs, Inc. ("Formlabs") and Kickstarter, Inc. ("Kickstarter") (collectively, the "Defendants") alleging that a Formlabs three-dimensional printer, the "Form 1," infringes 3D Systems' patent rights. Kickstarter was named as a Defendant (improperly) because Formlabs used Kickstarter for fund-raising.

Neither Formlabs nor Kickstarter, however, are subject to suit in this District.  Formlabs is a Delaware corporation with its principal place of business in Massachusetts.  Kickstarter is a Delaware corporation with its principal place of business in New York.  Neither Formlabs nor Kickstarter have any employees, registered agents, offices, telephone listings, mailing addresses, bank accounts, or books and records in South Carolina, and neither directs any advertising specifically towards South Carolina residents.  What is more, as the Complaint admits, the accused product has never been released – plainly, therefore *no* accused product has ever been sold to any resident of South Carolina nor has any accused product *ever* been used in South Carolina.  Neither Formlabs nor Kickstarter are subject to jurisdiction in South Carolina and 3D Systems' Complaint must be dismissed.

Were the Court to address the Complaint itself, the Court should dismiss it under Rule 12(b)(6).  Given that the Complaint admits that the Form 1 3D printer has not been delivered, that 3D Systems has not had access to it, and that the Form 1 3D product is in development, there is nothing in the Complaint that allows one to draw a reasonable inference that Formlabs is liable for direct infringement by virtue of making and using the Form 1 in a manner that infringes claims 1 and 23 of the '520 patent as alleged.  Furthermore, no sale or offer for sale of the Form 1 has been made to any customers.  Rather, backers of the Formlabs project at the printer level have merely received the *potential* opportunity to purchase a Form 1 printer with the

understanding that their money would be refunded if they did not receive a printer. And even if an offer for sale had been made (it has not), an offer to sell a product capable of performing a claimed method is not infringement. Thus, 3D Systems has failed to state a claim of infringement against Formlabs.

Likewise, 3D Systems has failed to state a claim of infringement against Kickstarter. Indeed, Kickstarter plainly does not belong in this case. The Complaint asserts infringement of only method claims. There is no allegation that Kickstarter used the accused printers, nor can there be – the product has not been released. There also is no allegation that Kickstarter caused any consumer to practice the method, nor can there be – no consumer has ever received one. Kickstarter is not a store. It provides a service where companies can raise funds using the Kickstarter website. Naming Kickstarter as a defendant in this lawsuit is analogous to suing a company that owns a billboard on which an accused product is advertised. There is simply no rational connection between Kickstarter and any alleged infringement of the asserted patent, and 3D Systems' completely unsupported infringement allegations fail to state any plausible claim on which relief can be granted.

Should the Complaint not be dismissed outright, then in the alternative, the Defendants request that the matter be transferred to the District of Massachusetts, for the reasons described below.

## II.    FACTS

### A.    Formlabs

Formlabs is a Cambridge, Massachusetts-based startup company that is developing an innovative tool to transform 3D computer models into physical objects through a process known

2

in the 3D "printing" field as inverted stereolithography.[1]  Declaration of Maxim Lobovsky ("Lobovsky Decl.")  at ¶ 2.  Founded in 2011, Formlabs set out to develop a high-quality, low-cost 3D printer that would enable designers and engineers to access this previously cumbersome process and to create 3D shapes with a touch of a button.  *Id.* at ¶ 5.  Formlabs continues to design and develop its flagship product, which it expects to release later this year as the "Form 1."  *Id.* at ¶ 6.

As a small startup, Formlabs lacks any presence or connection to South Carolina.  In particular, Formlabs does not have any employees based in South Carolina, and no Formlabs employees have ever travelled to South Carolina on business.  *Id.* at ¶ 9.  Formlabs does not conduct business in South Carolina, nor is it registered to do business in South Carolina.  *Id.* at ¶ 10.  Formlabs does not have a registered agent for service of process in South Carolina.  *Id.* at ¶ 11.  Formlabs does not have offices, telephone listings, or mailing addresses in South Carolina. *Id.* at ¶ 12.  Formlabs does not have bank accounts in South Carolina.  *Id.* at ¶ 13.  Formlabs does not own or lease property located in South Carolina.  *Id.* at ¶ 14.  Formlabs does not maintain any books or records in South Carolina.  *Id.* at ¶ 15.  Nor does Formlabs direct any advertising specifically towards South Carolina residents.  *Id.* at ¶ 16.

### B.    Kickstarter

Kickstarter is a New York City-based funding platform for creative projects.  Declaration of Jared Cohen ("Cohen Decl.") at ¶ 2.  Projects on Kickstarter fall into thirteen categories such as: Art, Comics, Dance, Design, Fashion, Film and Video, Food, Games, Music, Photography, Publishing, Technology, and Theater.  *Id.* at ¶ 3.  Each project is created, posted, and controlled

---

[1] Stereolithography systems build physical items from digital models by using a laser to selectively cure, or harden, a liquid resin into a solid material.  Stereolithography systems produce precise and durable models for designers, engineers, and other creators by building up layers of cured resin.  *Id.* at ¶ 4.

by users of Kickstarter. *Id.* at ¶ 4. The artists, filmmakers and others who post projects on Kickstarter are responsible for the implementation of their projects. *Id.* at ¶ 5.

As merely a fundraising platform, Kickstarter is not involved in the development of the projects themselves. The project creator sets a fundraising goal and deadline, and Kickstarter does not guarantee projects or investigate a creator's ability to complete his or her project. *Id.* at ¶ 6. Users can pledge money towards individual projects that they support, thereby becoming "backers" of those projects if the project hits its fundraising goal. *Id.* at ¶ 7. Project creators offer "rewards" at various levels of contribution. Previous rewards have included public acknowledgement on a website, listings in credits, invitations to exclusive parties, a T-shirt, or the opportunity to obtain a copy of a book or movie. *Id.* at ¶ 8. Fundraising on Kickstarter is all-or-nothing. *Id.* at ¶ 9. If a project is at or over its funding goal at the project deadline, backers' credit cards are charged; if a project falls short, no one is charged. Funds pledged to projects in the United States, such as the Formlabs project, are processed and collected by a third-party service called Amazon Payments, which is not controlled or guaranteed by Kickstarter. *Id.* Kickstarter never collects money from backers and never provides any project creator's rewards to backers. *Id.* at ¶ 11. In short, Kickstarter is not a store, a sales agent/representative, or any other type of intermediary in the sale of any goods or services. *Id.* at ¶ 12. It is a website that allows project creators and audiences to connect, and for creators to raise (and backers to provide) funds for creative projects. *Id.*

Kickstarter does not have any employees based in South Carolina, and no Kickstarter employees have ever travelled to South Carolina on business. *Id.* at ¶ 13. Kickstarter is not registered to do business in South Carolina. *Id.* at ¶ 14. Kickstarter does not have a registered agent for service of process in South Carolina. *Id.* at ¶ 15. Kickstarter does not have offices,

telephone listings, or mailing addresses in South Carolina. *Id.* at ¶ 16. Kickstarter does not have bank accounts in South Carolina. *Id.* at ¶ 17. Kickstarter does not own or lease property located in South Carolina. *Id.* at ¶ 18. Kickstarter does not maintain any books or records in South Carolina. *Id.* at ¶ 19. Kickstarter does not direct any advertising specifically towards South Carolina residents. *Id.* at ¶ 20. Since Kickstarter's launch on April 28, 2009, less than 0.3% of the money it has collected is known to have gone to projects based in South Carolina. *Id.* at ¶ 21.

### C. Formlabs' Project

On September 26, 2012, Formlabs initiated a project through Kickstarter.com to raise money, with a goal of raising at least $100,000 to help bring its first product to market. Lobovsky Decl. at ¶ 17; *see also* Compl. at ¶ 8.[2] Kickstarter provided a platform for Formlabs to raise money. Cohen Decl. at ¶ 10. To encourage backers to contribute, Formlabs offered certain incentives, from a T-shirt to a souvenir cube to the opportunity to be among the first to make an offer to purchase a 3D printer from Formlabs—should one actually be completed through development and manufacture. Lobovsky Decl. at ¶ 18; *see also* Compl. at ¶ 11. Formlabs' project concluded on October 26, 2012. Lobovsky Decl. at ¶ 20; *see also* Compl. at ¶ 11. A total of approximately 2,068 backers contributed anywhere from $1 to $10,000, and the monetary contributions totaled $2,945,885. Lobovsky Decl. at ¶ 20. Kickstarter had no role in the design or development of the Formlabs Form 1 3D printer. Cohen Decl. at ¶ 10. Kickstarter is a fundraising platform for creative projects. It is not in the business of designing, developing, or selling 3D printers. *Id.* Formlabs drafted its fundraising web page, set the fundraising goal

---

[2] Defendants have submitted explanatory declarations providing more background concerning their respective businesses and the relationship between Formlabs and Kickstarter in support of their motions under Rules 12(b)(2) and 12(b)(3), as well as its alternative motion to transfer. Defendants rely exclusively on the factual allegations plead in the complaint in moving to dismiss under Rule 12(b)(6).

for the project, and determined whether and in what form it would provide incentives to backers. Lobovsky Decl. at ¶ 19.

Backers contributing money at the printer level to Formlabs' project received the *potential* opportunity to purchase a Form 1 printer with the understanding that their money would be refunded if they did not receive a printer.  Lobovsky Declaration at ¶¶ 21-23.  None of these backers were guaranteed delivery of a Form 1 printer on any specific date, or at all.  *Id.* at ¶ 22.  Rather, being a backer above a certain level, plus subsequently completing additional steps including pre-payment of shipping costs, would suffice to perfect an offer to purchase a Form 1. *Id.* at ¶¶ 21-23.  Backers who contributed enough to secure their place in line to be one of the first to purchase the Form 1 printer were advised that after the funding period was over—and Formlabs had a product ready to ship—the backer would receive an invitation to go to Formlabs' website, enter their shipping information, and pay the costs of shipping (which will vary by location and country).  *Id.* at ¶ 21.  If the backer does not accept that invitation and pay the shipping costs, then Formlabs will refund the backer's money.  *Id.* at ¶ 23.  Moreover, Formlabs reserved the right to **decline** any offers by any of backers, at which point any money received is simply refunded.  *Id.*

Although Formlabs does not have the mailing address for all 1,028 backers who contributed at the printer level on the Kickstarter website, of the 51% of such backers for which it does have the mailing address, only two backers gave addresses in South Carolina.  *Id.* at ¶ 24. Neither of those two backers has perfected their offer to purchase, and if they do, as a small start-up, and given this lawsuit, Formlabs has determined that it will not be accepting orders from South Carolina, and will therefore refund any such contributions.  *Id.* at ¶ 25.

Subsequent to the completion of Formlabs' fund-raising, Formlabs began permitting individuals to offer to buy a Form 1 directly through Formlabs' website. Formlabs has received no such offers from any residents of South Carolina. Given Formlabs' decision not to ship to South Carolina, Formlabs will reject any future offers to purchase from residents of South Carolina. *Id.* at ¶ 27. Regardless, however, Formlabs has **not** delivered any of its Form 1 printers to any customers in any states to date, let alone South Carolina. *Id.* at ¶ 26; *see also* Compl. at ¶¶ 12, 15. The Form 1 printers are in a prototype stage still pending mass production and manufacturing. Lobovsky Declaration at ¶ 26. Thus, no one that backed Formlabs' project has used the Form 1 printer, nor has a Form 1 printer ever been used in South Carolina. *Id.*

### D.    3D Systems' Lawsuit

On November 20, 2012, 3D Systems filed a lawsuit alleging that both Formlabs and Kickstarter infringe U.S. Patent No. 5,597,520 ("the '520 Patent"), entitled "Simultaneous Multiple Layer Curing In Stereolithography," which 3D Systems alleges "cover[s] improved methods of stereolithographically forming a three-dimensional object[.]" Compl. at ¶ 17. More specifically, 3D Systems alleges that both Formlabs and Kickstarter have directly or indirectly infringed Claims 1 and 23 of the '520 Patent, both method claims. Compl. at ¶¶ 22 - 24. 3D Systems' itself admits that the "pioneering patents owned by 3D Systems that would have covered the Form 1 3D printer [are] expired." *Id.* at ¶¶ 31 and 32. Indeed, the '520 Patent describes stereolithographic 3D printing technology as well known in the art, citing to a prior 3D patent on stereolithography (U.S. Patent No. 4,575,330) that was filed in 1984 and expired in 2004. *See* '520 Patent at Column 1, lines 49-52. Despite this, 3D Systems' Complaint alleges the accused Formlabs device infringes by its use of "stereo lithography (SL) technology." *Id.* at ¶¶ 8, 9, 17, 23. It appears, however, that 3D Systems' has brought its Complaint without

7

inspecting the Form 1 or otherwise conducting a reasonable pre-filing technical analysis—indeed, the Form 1 remains under development and has not yet been released.

## III.    ARGUMENT

### A.    There Is No Personal Jurisdiction Over Defendants In This District

Neither Formlabs nor Kickstarter have sufficient contacts with the State of South Carolina to establish either general or specific jurisdiction. Because there is no jurisdiction over Defendants in this District, the Court should dismiss them pursuant Fed. R. Civ. P. 12(b)(2).

#### 1.    It is Plaintiff's Burden to Establish Personal Jurisdiction

In patent infringement cases, the law of the United States Court of Appeals for the Federal Circuit governs the question of whether a trial court has personal jurisdiction over a defendant. Under that law, it is the plaintiff's burden to establish a *prima facie* case that personal jurisdiction exists. *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010).

Here, 3D Systems must establish either general or specific jurisdiction in South Carolina, based on Formlabs and Kickstarter's respective contacts with this District as of the date of the complaint, November 20, 2012. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996). In determining whether a plaintiff has met that burden, the Court construes the pleadings and defendant's affidavit(s) in plaintiff's favor. *See Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1282-83 (Fed. Cir. 2005). But even such favorable construction for 3D Systems' cannot overcome the fact that Defendants have no contacts with this District that would support either general or specific jurisdiction.

### 2. Defendants Are Not Subject to General Personal Jurisdiction in this District

General jurisdiction arises when a defendant has sufficient continuous and systematic contacts with the district such that it is fair to force it to litigate there, even if the cause of action did not arise from the defendant's activities in the district. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (*quoting lnt'l Shoe Co. v. Washington*, 326 U.S. 310,319 (1945)). Accordingly, general jurisdiction may not be asserted over an out-of-state defendant unless its "conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Due Process Clause further requires key safeguards before imposing general jurisdiction on out-of-state defendants: (1) the defendant must have sufficient contacts with the district, (2) those contacts must be purposeful, and (3) the exercise of jurisdiction must be reasonable under the circumstances. *See Int'l Shoe*, 326 U.S. at 316; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 113 (1987). As the Supreme Court explained in *Helicopteros*, 466 U.S. at 414-16, "sufficient contacts" for purposes of general jurisdiction means "continuous and systematic" contacts with the forum state. While the issue is fact-specific, such contacts may be demonstrated when the defendant maintains a place of business, is licensed to do business, authorizes a lawsuit to be brought against it, or regularly conducts business in the forum. *Id.* at 416. Correspondingly, when (as here), none of those factors is present, there is no general jurisdiction.[3] Nor can a small volume of sales into a forum establish general jurisdiction. In

---

[3] As to whether exercising jurisdiction is reasonable, the Supreme Court has stated that each case will depend on several factors: "the burden on the defendant, the interests of the forum State, and the plaintiffs interest in obtaining relief[;] 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'" *Asahi*, 480 U.S. at 113. As discussed in

*Campbell Pet Co. v. Miale*, the Federal Circuit held that where 2% of the defendant's sales were generated from the challenged district, that level of sales was too small to confer general jurisdiction. *Campbell Pet Co.*, 542 F.3d 879, 883-84 (Fed. Cir. 2008). The Federal Circuit explained that this "degree of commercial activity is far short of the amount that was presented in *Helicopteros Nacionales* case, yet in that case, the Supreme Court held that even that degree of activity was insufficient."[4] *Id.*

Here, neither Formlabs nor Kickstarter engages in any activity in this District that would approach the threshold of general jurisdiction. Formlabs is headquartered in Cambridge, Massachusetts and incorporated in Delaware. It lacks any connections with South Carolina sufficient to establish systematic and continuous contacts with the state, or to support an argument that it purposefully avails itself of the "benefits and protections" of South Carolina law. Formlabs is not registered to do business in South Carolina; maintains no registered agent for service of process in South Carolina; has no offices in South Carolina; has no telephone listings or mailing addresses in South Carolina; has no bank accounts in South Carolina; does not own or lease property located in South Carolina; has no books or records in South Carolina; has no employees based in South Carolina; and does not target advertising at the residents of South Carolina. No employees of Formlabs have made any business trips to South Carolina.

_____

Section II, *infra*, these factors all favor a finding that exercising jurisdiction here would be unreasonable.

[4] In *Helicopteros*, the defendant's contacts with the forum consisted of: (i) sending its CEO to the forum for contract negotiations; (ii) accepting $50 million in payments through checks drawn on a forum bank account; (iii) purchasing 80% of its helicopter fleet and more than $4 million worth of products and equipment from the forum; (iv) sending personnel into the forum for training sessions; and (v) sending management personnel to visit its primary vendor in the forum. *See Helicopteros*, 466 U.S. at 411-12, 416. Despite these contacts, the Supreme Court held the forum court could not maintain general personal jurisdiction over the defendant, finding that the contacts were insufficient to satisfy the "continuous and systematic" requirement of Due Process. *Id.* at 418-19.

Furthermore, Formlabs does not derive its business revenues from South Carolina in any manner that comes close to being constitutionally meaningful.  Indeed, Formlabs is only aware of *two* backers with South Carolina addresses who invested at the printer level, and even that money will be returned given Formlabs' decision not to accept orders from South Carolina.

Kickstarter's contacts are equally insufficient.  Kickstarter is headquartered in New York City and incorporated in Delaware.  It has no connection with South Carolina to support systematic and continuous contacts with the state, or to support an argument that it purposefully avails itself of the "benefits and protections" of South Carolina law.  Kickstarter is not registered to do business in South Carolina; maintains no registered agent for service of process in South Carolina; has no offices in South Carolina; has no telephone listings or mailing addresses in South Carolina; has no bank accounts in South Carolina; does not own or lease property located in South Carolina; has no books or records in South Carolina; has no employees based in South Carolina; and does not target advertising at the residents of South Carolina.  Indeed, no employees of Kickstarter have made any business trips to South Carolina.  Furthermore, Kickstarter does not derive its business revenues from South Carolina in any manner that comes close to being constitutionally meaningful.  Indeed, for all of its projects, less than 0.3% of Kickstarter's revenue is generated from South Carolina-based backers – less than other cases where personal jurisdiction has been denied (see below).

In sum, neither Formlabs nor Kickstarter have any connections to the State of South Carolina that could rise to the required level of "continuous and systematic" contact required under *Helicopteros* and *Campbell Pet*.  *See also, e.g.*, *Stairmaster Sports/Medical Products, Inc. v. Pacific Fitness Corp.*, 916 F. Supp. 1049, 1053 (W.D. Wash. 1994), *aff'd*, 78 F.3d 602 (Fed. Cir. 1996) (no general personal jurisdiction over a defendant whose only contacts with the forum

were isolated visits by defendant's agents and products shipped into forum which were unrelated to suit and constituted only 3% of total sales); *Stars for Art Prod. FZ, LLC v. Dandana*, LLC, 806 F. Supp. 2d 437, 444-45 (D. Mass. 2011) (no general jurisdiction over a defendant with 70,000 customers in Massachusetts, which constituted only approximately 0.5% of the defendant's total customers).    And, given Formlabs and Kickstarter's respective minimal contacts with South Carolina, it would be wholly unreasonable to force them to litigate in this District.  Accordingly, there is no basis for general personal jurisdiction over either defendant.

### 3.    Defendants Are Not Subject to Specific Personal Jurisdiction in this District

Specific jurisdiction adheres when the asserted claim arises from the defendant's specific actions in the District, even if the defendant's unrelated contacts in the district are not sufficient to merit an exercise of general jurisdiction.  *See Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003), *citing Burger King*, 471 U.S. at 472-73; *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1350 (Fed. Cir. 2002); *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000)).   In assessing specific jurisdiction in a patent case, the Federal Circuit considers the forum's long-arm statute and determines whether applying jurisdiction under that statute would comply with due process requirements.   *See Nuance Commcn 's, Inc.*, 626 F.3d at 1230.[5]   The same due process requirement of "minimum contacts" in the context of specific jurisdiction demands that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d, 1344, 1350 (Fed. Cir. 2003) (*quoting Int 'l Shoe Co.*

---

[5] The South Carolina long-arm statute extends to the limits permitted by the United States Constitution.  *See Foster v. Arletty 3 S.A.R.L.*, 278 F.3d 409, 414 (4th Cir. 2002).  Therefore, the analysis collapses into determining whether personal jurisdiction exists under the Due Process Clause of the Constitution.  *See Stover v. O'Connell Assoc., Inc.*, 84 F.3d 132, 136 (4th Cir.1996).

*v. Washington*, 326 U.S. 310, 316 (1945) (internal citation omitted)).   In making this determination, the Federal Circuit applies the following three part inquiry: (1) whether defendant purposefully directed activities at the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether asserting personal jurisdiction is reasonable and fair.  *Id.*  Under this test, 3D Systems cannot meet its burden of establishing that this Court has specific jurisdiction over Defendants.

### a.  Defendants do not "purposefully direct" activities at South Carolina

"Purposefully directing" activity at a forum for purposes of specific jurisdiction requires some element of deliberate action targeting residents of that forum.  *Nuance Commnc'ns.*, 626 F.3d at 1232-33 (*citing Burger King*, 471 U.S. at 475-76); *see also Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994) (finding that defendants had "fair warning" they would be subject to personal jurisdiction in Virginia because they purposefully shipped the accused fan into that state).  Here, neither Formlabs nor Kickstarter directs any of its activities into this District.

3D Systems' sole allegation of activity directed at South Carolina residents is based on Formlabs and Kickstarter's respective alleged "website sales activities of regularly soliciting and conducting sales activities within South Carolina and this judicial district."  *See* Compl. ¶ 5. Formlabs' website, however, is maintained in Massachusetts, Kickstarter's website is maintained in New York City, and *no* Form 1 printers have been delivered to anyone in South Carolina, whether a backer of Formlabs or otherwise.

Nor can fundraising through Kickstarter, whether from individuals in South Carolina or elsewhere, be characterized as sales or offers to sell under 35 U.S.C. § 271(a).  To determine whether an offer for sale has occurred under the patent laws, courts apply general contract

principles, e.g., by looking to the Uniform Commercial Code or Restatement of Contracts.  *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1254-55 (Fed. Cir. 2000).  An allegedly infringing offer to sell must be of such a character that "the defendant 'communicate[s] a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'"  *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005), *quoting Rotec*, 215 F. 3d at 1255;  *Moldflow Corp. v. Simcon, Inc*., 296 F. Supp. 2d 34, 44 (D. Mass. 2003) (requiring marketing efforts to  include specific terms and sufficient definiteness, as required by common-law principles of contract law, to rise to the level of an offer to sell).  In short, an "offer" must be something a customer can accept.

Here, there can be no question that an "offer for sale" was never made.  All backers who contributed enough to secure their place in line to be one of the first to purchase the Form 1 printer were advised that after Formlabs' project concluded and Formlabs had a product ready to ship, the backer would receive an invitation to go to Formlabs' website, enter their shipping information, and pay the costs of shipping (which will vary by location and country).  If the backer does not accept that invitation and pay the shipping costs, then Formlabs will refund the backer's money.

As a matter of law, Formlabs' fund-raising cannot constitute an "offer for sale".  "[A] website that allows a viewer to ***place a preorder is not an offer to sell***."  *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 660 (E.D. Tex. 2007) (concerning pre-orders of a specific model of sunglasses).  This is highlighted by Formlabs' decision not to ship to South Carolina.  No Form 1 printers have been or will be sold or shipped to South Carolina.  Formlabs has the right to avoid jurisdiction in a particular forum by following the advice of the courts and limiting

14

to whom it will sell the accused products.  As many courts have advised, if Formlabs does not "want[ ] to be amenable to jurisdiction in [South Carolina]," it is certainly free to "[choose] not to sell [its products] to [South Carolina] residents."  *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1126-27 (W.D. Pa. 1997); *see also Stomp, Inc. v. Neato, LLC*, 61 F. Supp. 2d 1074, 1080-81 (C.D. Cal. 1999).  That is precisely the choice that Formlabs is making.[6]  Formlabs reserved the right not to accept any offers (highlighting that Formlabs was not making offers for sale, under the UCC) by the backers or otherwise, at which point any money received is simply refunded.  Thus, although two backers from South Carolina made printer-level contributions, neither of those two backers have actually perfected their offer to purchase, and if they do, as a small start-up, and given this lawsuit, Formlabs has determined that it will not be accepting orders from South Carolina, and will therefore refund any such contributions.

What is more, even were the fund-raising considered an "offer to sell" a printer (plainly it was not), there could *still* be no jurisdiction because an offer for sale of a printer cannot, as a matter of law, infringe 3D Systems' patent.  The Complaint only identified *method* claims as allegedly infringed (namely claims 1 and 23).  An offer to sell a machine capable of performing a claimed method is not infringement.  *See Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1349 (Fed. Cir. 2000) (per curiam).  Thus, 3D Systems can only prove infringement of claims 1 and 23 in South Carolina through the *use* of the Form 1 printer in South Carolina, and it is undisputed that the Form 1 printer has never been used in South Carolina whether by Formlabs,

---

[6] To be clear, personal jurisdiction is measured at the time suit is filed.  *See GAF Bldg. Materials Corp.*, 90 F.3d at 483.   At that time, with only two South Carolina-based backers at the printer level, there were insufficient contacts to justify exercising jurisdiction.  Formlabs' decision about future sales is meant simply to preserve that status quo.

15

Kickstarter, or anyone else.[7]

Because no offer for sale has been made at all, Kickstarter plainly could not have made an offer to sell a printer, let alone a method of printing. In addition, even had an offer for sale of the patented method been made by Formlabs (none was), such an offer surely was never made by Kickstarter. Under no conceivable version of the facts can *Kickstarter* be viewed as making an offer for sale or any other type of offer which could legally bind Kickstarter to deliver a printer. Kickstarter is not a store and it is not a sales agent for any of its thousands of creators. This is made plain on Kickstarter's website, which states that "[n]o agency, partnership, joint venture or employment relationship is created as a result of the Terms of Use [between Kickstarter and its creators] and neither party has any authority of any kind to bind the other in any respsect. *See* http://www.kickstarter.com/terms-of-use?ref=footer (last visited Feb. 21, 2013).

There is no personal jurisdiction over Formlabs and there is certainly no personal jurisdiction over Kickstarter – a bystander to the present dispute, no matter in which forum the dispute may ultimately be addressed.

---

[7] Even if Formlabs had made a handful of *actual sales* to South Carolina (which it obviously has not), 3D Systems would be pushing the limits of personal jurisdiction to reach Formlabs (let alone Kickstarter). While some courts have held that even the single sale of an accused product shipped into the forum may give rise to specific jurisdiction (*see, e.g.*, *Angela Adams Licensing, LLC v. Dynamic Rugs, Inc.*, 463 F.Supp.2d 82, 85 (D. Me. 2006) (the "act of shipping an infringing rug to Maine alone would establish personal jurisdiction for a claimed infringement as to that design")), others have rejected the notion that such minimal sales volumes should be sufficient to establish specific jurisdiction. *See, e.g.*, *Silver Ring Splint Co. v. Digisplint, Inc.*, 508 F. Supp. 2d 508, 513 (W.D. Va. 2007) (holding that single sale to a customer in forum state combined with other communications to potential customers in forum state not sufficient to exercise specific jurisdiction); *Shamsuddin v. Vitamin Research Prods.*, 346 F. Supp. 2d 804, 813 (D. Md. 2004) (holding that two Internet sales in forum state were insufficient to exercise specific jurisdiction). Of course here, as discussed, no Form 1 printers have ever even been shipped to South Carolina, let alone used in South Carolina, eliminating even the possibility that jurisdiction could be found.

**b.    3D System's infringement claim does not "arise out of" or "relate to" any alleged activity of the Defendants in this District.**

Without an activity directed at South Carolina residents, 3D Systems cannot establish the second prong of the specific jurisdiction test.  The test is whether the activity in the forum state is a basis for the cause of action.  *See HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308 n.4 (Fed. Cir. 1999); *Nuance Commc'ns*, 626 F.3d at 1233 (prong met when over 95% of the profits obtained through the allegedly infringing sales in the forum state flowed to the defendant).  Here, for the reasons established above, there is no alleged activity in the forum state for 3D Systems' infringement claim to "arise out of" or "relate to."  Because 3D Systems' claim of infringement does not arise out of alleged infringing activity in South Carolina, 3D Systems cannot establish this Court's specific jurisdiction over Defendants.

**c.    It would be unreasonable and unfair to force Defendants to litigate in this District.**

For this third and final specific jurisdiction prong, the Federal Circuit has required a showing of a "compelling case ... of some other considerations [that] would render jurisdiction unreasonable."  *Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed. Cir. 1995).  The Court has held a forum state's legitimate interest is in addressing injuries to its citizens perpetrated in that forum by out-of-state actors.  *See id.* (*citing Beverly Hills Fan*, 21 F.3d at 1568).  But once again, because no allegedly infringing sales or use of the Form 1 has occurred in South Carolina, 3D Systems cannot meet this element of the specific jurisdiction test.

3D Systems is unable to demonstrate the existence of either general or specific jurisdiction over Defendants.  The case therefore must be dismissed or transferred to the District

of Massachusetts.[8]

### B.    The Complaint Should Be Dismissed For Improper Venue

Because this Court has no personal jurisdiction over the Defendants in this case, this matter should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).  Alternatively, it should be dismissed (or transferred) for improper venue under Fed. R. Civ. P 12(b)(3).  In patent cases, venue is governed by 28 U.S.C. § 1400(b), which holds that venue is proper in (i) "the judicial district where the defendant resides," or (ii) districts "where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  Under this statue, a corporate defendant is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c).

Although venue generally involves selecting a forum that is convenient for the parties and witnesses, "the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial."  *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183-84 (1979).   The Supreme Court has repeatedly held that 28 U.S.C. § 1400(b) provides "the sole and exclusive provision controlling venue in patent infringement proceedings."  *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957); *Stonite Prods. Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 563 (1942).  Moreover, the venue statute for patent infringement is to be strictly construed.  *Schnell v. Peter Eckrich & Sons, Inc.*,

---

[8] 28 U.S.C. § 1406(a) provides that, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  Accordingly, if the Court finds it would be in the interest of justice, it may transfer this case for lack of personal jurisdiction, rather than dismissing the action.  *Porter v. Groat*, 840 F.2d 255, 258 (4th Cir. 1988) ("[W]e adopt as the rule in this circuit the reading of § 1406(a) that authorizes the transfer of a case to any district, which would have had venue if the case were originally brought there, for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district.").

365 U.S. 260, 264 (1961). "[I]f the statutory rules on venue are not followed, and objection is made on the ground of improper venue, the action cannot be heard in that federal district, even though the court may have jurisdiction over the subject matter and over the defendant's person." Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction 3rd at § 3801.

Here, venue is improper because, as discussed in Section III(A), Defendants are not subject to personal jurisdiction in South Carolina. Neither Formlabs nor Kickstarter "reside" in South Carolina for purposes of venue under 28 U.S.C. § 1400(b), and furthermore, no acts of alleged infringement have occurred in South Carolina. Additionally, neither Formlabs nor Kickstarter has a "regular and established place of business" in South Carolina. Accordingly, South Carolina is not a proper venue for Defendants, and Defendants respectfully request an Order of Dismissal, or alternately, an Order transferring all claims against Defendants to the District of Massachusetts, as discussed in the following section. *See* Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction 3rd at § 3826.

### C.    The Court Should Dismiss The Infringement Claims Under Fed. R. Civ. P. 12(b)(6)

The Complaint against Kickstarter accuses Kickstarter of infringing method claims by selling or offering to sell a 3D printer, which the Complaint admits has never been delivered. These method claims cannot be practiced or directly or indirectly infringed in the absence of delivery. The complaint against Kickstarter is facially deficient and should be dismissed.

Similarly, the Complaint against Formlabs with respect to the same printer is merely conclusory and speculates about direct and indirect infringement without any plausible factual basis. Accordingly, the Complaint should be dismissed for failure to state a claim of infringement against both parties.

### 1.    The Legal Standard Under Rule 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Historically, courts ruled that a complaint satisfied this requirement unless it appeared "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (citations omitted). The Supreme Court retired this analysis with its decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and established a two-pronged analysis to determine the sufficiency of a complaint. *See Iqbal*, 129 S. Ct. at 1950.

Under the first prong, the court identifies those pleadings supported by factual allegations. *See id*. The Supreme Court has emphasized that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (*citing Twombly*, 550 U.S. at 555). Rather a complaint must contain well-pleaded factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under the second prong, the court assumes the well-pleaded factual allegations as true and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.*

The Supreme Court deemed the *Twombly-Iqbal* framework critical to any review of a motion to dismiss in "all civil actions" under Fed. R. Civ. P. 12(b)(6). *See id.* at 1949, 1953. In patent infringement cases, Form 18 of the Federal Rules of Civil Procedure provides the format for pleading.[9] Many courts have dismissed patent infringement complaints that follow Form 18

---

[9] *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.* (*R+L Carriers, Inc. v. DriverTech LLC*), 681 F.3d 1323, 1334 (Fed. Cir. 2012) (Explaining Form 18 requires "(1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that

(previously Form 16) when the allegations of infringement were too vague and when the allegations could not lead to a plausible finding of infringement. *See, e.g., Palmetto Pharmaceuticals LLC v. Astrazeneca Pharmaceuticals LP,* No. 2:11–cv–00807–SB–JDA, 2012 WL 484907 at *5, 6 (D.S.C. Jan. 4, 2012) (report and recommendation of Magistrate Judge Austin dismissing plaintiff's direct and contributory infringement claims because the Complaint alleged defendant sold "Crestor," but did not allege defendant practiced the patented method or controlled administration of Crestor to patients according to the method) (adopted by Senior District Court Judge Blatt, Jr. in 2012 WL 484848 (D.S.C. Feb. 14, 2012)); *Adiscov, LLC v. Autonomy Corp.*, 762 F. Supp. 2d 826, 830 (E.D. Va. 2011)  (finding the accusation of infringement too vague), *citing McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007); *Realtime Data, LLC v. Stanley*, 721 F. Supp. 2d 538, 540 (E.D. Tex. 2010) (dismissing patent infringement claim because plaintiff's reference to "data compression products and services" did not sufficiently identify defendant's accused products); *Eidos Commc'ns LLC v. Skype Techs.*, 686 F. Supp. 2d 465, 466 (D. Del. 2010) (dismissing under *Twombly* even though complaint identified defendants' "communication system products and/or methodologies"); *Fifth Market, Inc. v. CME Group, Inc.*, C.A. No. 08-520 GMS, 2009 WL 5966836, at *1 (D. Del. May 14, 2009) (dismissing even though complaint identified defendant's specific product); *Ware v. Circuit City Stores, Inc.*, No. 4:05–CV–0156–RLV, 2010 WL 767094, at *2 (N.D. Ga. Jan. 5, 2010) (dismissing because reference to defendants' "apparatuses" is vague and can refer to "various things as well as various processes and is overly broad and vague").

---

defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages") (*quoting McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)).

2.    **The Complaint Fails To State A Plausible Claim For Direct Infringement against Kickstarter**

For its claims of direct infringement against Kickstarter, 3D Systems alleges that "Kickstarter has offered to sell and sold Form 1 3D printers in the United States and within the jurisdiction of the Court that directly infringe at least claims 1 and 23 of the '520 patent." Complaint at ¶¶ 10,15 and 38. For the reasons described above, this is simply wrong – no offer has ever been made and no sale has ever been completed.

The Complaint also acknowledges, however, that there have been no deliveries of the Form 1 3D printers, *id.* at ¶¶ 12, 15, and alleges that Kickstarter's role in the alleged infringement was as a "funds raiser" or "selling agent." *Id.* at ¶ 10. Even taking these allegations as true as far as they go, the allegations of direct infringement here are deficient against Kickstarter for several reasons.

First, as a matter of law, an offer to sell a product capable of performing a claimed method is not infringement. *See* this Court's decision in *Palmetto Pharmaceuticals LLC v. Astrazeneca Pharmaceuticals LP,* 2012 WL 484907 at *4, explaining that "a patent claiming a method, such as the # 516 patent, 'is directly infringed only by one practicing the patented method,'" *citing Joy Techs. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993) (emphasis omitted), "which requires actual performance of all of the steps of the patented method, either by the infringer or by one under the infringer's direction and control." (additional citations omitted). *See also Embrex, Inc.*, 216 F.3d at 1349 (holding that an offer to sell a machine capable of performing a claimed method is not infringement).

Here, the Complaint alleges that Kickstarter's sales of Form 1 3D printers directly infringe claims 1 and 23 of the '520 patent. Both of these claims are method claims and the Complaint acknowledges that <u>no</u> Form 1 3D printers have been delivered to anyone to whom

Kickstarter allegedly sold or offered to sell a Form 1 3D printer. Accordingly, under the *Astrazeneca*, *Joy Techs*. and *Embrex* cases, no one could be using a Form 1 3D printer as a result of any "sale" involving Kickstarter that could amount to infringement of the method claims. Therefore, as in the *Astrazeneca* case, these allegations of direct infringement are not plausible on their face and should be dismissed.

Second, because there have been no deliveries of Form 1 3D printers, 3D Systems has never had access to a Form 1 3D printer and cannot plead anything other than overly vague allegations. The Form 1 3D printer itself that is referenced in the Complaint is not a definite article, it is whatever Formlabs will deliver to customers and it does not currently exist anywhere in a form that could be delivered to customers – at most, prototypes exist. Certainly, no factual allegations in the Complaint establish what form the Form 1 3D printer will take as a result of the Formlabs project, nor could they.

Third, 3D Systems does not, and cannot, allege any offer for sale *by Kickstarter*. This is because Kickstarter's activities *vis a vis* Formlabs' backers do not even approach the character of an actual offer for sale in the contract sense. *See Rotec Indus.*, 215 F.3d. at 1255 (noting that an infringing offer for sale takes place when the infringer "communicate[s] a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."). Kickstarter hosted a website that assisted Formlabs to raise money. As 3D Systems admits in its Complaint, the Kickstarter website informs users that "[e]very project creator [*i.e.* Formlabs] sets their project's fundraising goal and deadline." Complaint at ¶ 13.

It is the project creator (here, Formlabs) who authors the page on the Kickstarter website that corresponds to its project and who determines the direction and form of its fundraising. *See*

Cohen Decl. at ¶¶ 6-8.  Even if any hypothetical Kickstarter project included an offer for sale of *any* goods or services, clearly no backer could be justified in understanding that **Kickstarter** had communicated a willingness to enter into a bargain with him or her.  It is astounding (and frivolous) that 3D Systems even purports to allege that the entirely passive role of Kickstarter could constitute an infringing offer for sale.  3D Systems provides absolutely no factual support for this conclusion in its Complaint and its infringement claim against Kickstarter must, therefore, be dismissed.  *Twombly*, 127 S. Ct. at 1965 ("Factual allegations must be enough to raise a right to relief above the speculative level.") (*citing* C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-36 (3d ed. 2004) ("[T]he pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).  Here, the Complaint itself establishes that, even if Formlabs could be accused of infringement, Kickstarter cannot.

Finally, in its attempt to make factual allegations to support its claims, 3D Systems makes several statements that cut against the potential for infringement by sales of the Form 1 3D printer.  For example, 3D Systems alleges that "the Terms of Use of Kickstarter include a term that companies such as Formlabs will not submit content that infringes any patent."  Complaint at ¶ 16.  This suggests that the eventual form of the Form 1 3D printer should not infringe the '520 patent.  Additionally, the Complaint focuses on the Form 1 3D printer's alleged use of "stereolithography (SL) technology" as relevant to the '520 patent.  *Id.* at  ¶¶ 9, 17, and 22.  However, the Complaint also references the expiration of fundamental patents on stereolithography, suggesting that stereolithography is no longer patented,  *id.* at ¶¶ 30 - 32.  This is further reinforced by the '520 patent, which refers to stereolithography as old and identifies a prior 3D Systems' patent  (U.S. Patent No. 4,575,330) on stereolithography that expired in 2004.

24

*See* '520 patent at Column 1, lines 49-52.  Consistent with these allegations from the Complaint and the '520 patent, each and every independent claim of the '520 patent claims,

> **stereolithographically** forming a three-dimensional object … forming said cross-sectional layers by selectively exposing said material to said synergistic stimulation … to build up the three-dimensional object layer-by-layer, **the improvement comprising**

*See* '520 patent, claims 1, 12, 13, 22-24, 27-30 (emphasis added).  This is referred to as a "Jepson" type claim and the language before "the improvement comprising" describes what is "conventional" that came before the invention.[10]  Thus, the references in the Complaint to a stereolithographic, Form 1 3D printer are vague as they relate to the '520 patent and premature as the product is in development and none have been delivered.

In similar circumstances, courts have noted that there must be something about an alleged offer for sale itself that plausibly demonstrates that the product that will be offered for sale infringes.  For example, in *Fieldturf Int'l, Inc. v. Sprinturf, Inc.*, 433 F.3d 1366, 1369-70 (Fed. Cir. 2006), the court held that a bid to supply a patented product specified in a Request for Proposal (RFP) is not an infringing "offer to sell" when state law interprets such an RFP to include an "or equal" clause and it is understood that the bidder will be supplying a non-infringing substitute.  Similarly here, FormLabs and Kickstarter are alleged to have specified a stereolithographic 3D printer as part of the Formlabs project, which Formlabs and Kickstarter agree will not infringe pursuant to the terms of service.  No printers are alleged to have been delivered.  Under these circumstances, as in *Fieldturf Int'l*, 3D Systems has no plausible claim

---

[10] *See, e.g.*, 37 C.F.R. 1.75(e), providing that where the nature of the case admits, as in the case of an improvement, any independent claim should contain in the following order:

> (1) A preamble comprising a general description of all the elements or steps of the claimed combination which are conventional or known, (2) A phrase such as "wherein the improvement comprises," and (3) Those elements, steps, and/or relationships which constitute that portion of the claimed combination which the applicant considers as the new or improved portion.

that the Form 1 3D printer allegedly offered identifies a product that might eventually infringe the '520 patent.

In view of the foregoing, the direct infringement allegations against Kickstarter should be dismissed.

### 3. The Complaint Fails To State A Plausible Claim For Direct Infringement against Formlabs

The Complaint fails to state a claim for direct infringement against Formlabs for sales and offers for sale of the Form 1 3D printer for the same reasons discussed above with respect to Kickstarter.[11]  The Complaint also alleges, against Formlabs only, that Formlabs directly infringes the '520 patent by virtue of having manufactured, made and used a Form 1 3D printer. *See* Complaint at ¶¶ 23 - 25.

Referring to ¶¶ 23 - 25, it is apparent that 3D Systems is merely reciting statutory language for "making" (or manufacturing) and "using" types of patent infringement and identifying two claims, claims 1 and 23, in the '520 patent as infringed.  As this Court has recognized, allegations such as these are merely conclusory, and do not add to the body of facts alleged in the Complaint.  *See Astrazeneca Pharmaceuticals LP,* 2012 WL 484907 at *4

> a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact). 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal footnote and citations omitted); *see also E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir.2000) (noting that court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"); *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 1216, at 235–

---

[11] Allegations of sales and offers to sell against Formlabs are found in the Complaint at ¶¶ 23-25, 33 and 34.

> 36 (3d ed. 2004) ("[T]he pleading must contain something more ... than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

*Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (*citing Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (*citing Twombly*, 550 U.S. at 556).

Here, given that the Complaint admits that the Form 1 3D printer has not been delivered, that 3D Systems has not had access to it, and that the Form 1 3D product is in development, there is nothing in the Complaint that allows one to draw a reasonable inference that Formlabs is liable for direct infringement by virtue of making and using claims 1 and 23 of the '520 patent as alleged.   3D Systems is merely speculating using conclusory language that Formlab's development of the Form 1 3D printer amounts to manufacture or use of a printer that might infringe using something more than old, stereolithographic technology that is in the public domain.  No factual allegations, however, support the conclusory infringement speculation, and to the extent that there are factual allegations in the Complaint they tend to lead to the conclusion that the Form 1 3D printer uses old technology that will not infringe.  As noted in *Twombly*, discovery is expensive and therefore absent a plausible complaint, a case should not proceed. *Twombly*, 550 U.S. at 558, 559.  The allegations of direct infringement against Formlabs are not plausible.

For the foregoing reasons, the Court should dismiss the allegations of direct infringement against Formlabs.

### 4.    3D Systems has Failed to Plead a Plausible Claim for Indirect Infringement

3D Systems alleges indirect infringement, both induced and contributory infringement, against Formlabs and Kickstarter.  *See* Complaint at ¶¶ 24 - 35 for Formlabs and ¶¶ 39 - 43 for Kickstarter.

First of all, 3D Systems has not even alleged knowledge of the asserted patent on the part of Kickstarter.  3D Systems' Complaint only generally states "[u]pon information and belief, Kickstarter had specific intent to infringe the '520 Patent by virtue of its agency, business and sales arrangement with Formlabs, which had actual knowledge of the '520 Patent and/or was willfully blind to the existence of the '520 Patent."  *Id.* ¶ 40.  This is insufficient.  At most, 3D Systems alleges that Formlabs had knowledge.  As a matter of law, it is insufficient to plead that Kickstarter had notice simply on the ground that an independent company had notice.

While the analysis should end there, these claims are also not plausible on their face because there can be no indirect infringement unless there is a direct infringement.

For contributory infringement, the U.S. Supreme Court long ago established that the threshold requirement for a claim of contributory infringement is the existence of direct infringement.  *See Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518 (1972).  Additionally, in order to prevent the patentee from extending his or her monopoly beyond the limits of the specific grant, the allegedly infringing article or commodity must be unsuited for any commercial, non-infringing use.  *See Dawson Chemical Co. v. Rohm and Haas Co.*, 448 U.S. 176 (1980).  Here, 3D Systems falls well short of the pleading requirement because as demonstrated above, no products have been delivered and there is no direct infringement to which either or both parties contributed.

With respect to Kickstarter, allegations of induced and contributory infringement by virtue of sales and offers to sell would require a third party to have received a Form 1 3D printer and have practiced the method. This is not even alleged to have occurred and accordingly there can be no direct infringement or contributory infringement. Similarly for Formlabs, the Complaint identifies no third party with which Formlabs could have cooperated to create a direct infringement and therefore a contributory infringement. Moreover, 3D Systems has not and cannot allege that a stereolithographic, 3D printer product can have no non-infringing uses, which is required for contributory infringement, when the patents on such printers have expired.

With respect to inducement, induced infringement also requires direct infringement. *See DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006) (*en banc*), *citing Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993) ("Liability for either active inducement of infringement or contributory infringement is dependent upon the existence of direct infringement."). As with contributory infringement, because there is no direct infringement, neither Formlabs nor Kickstarter can be found to have induced a third party to infringe.

In view of the foregoing, the Court should dismiss the remaining allegations of infringement, by indirect infringement, against both Formlabs and Kickstarter pursuant to Rule 12(b)(6).

### D.    If It Does Not Dismiss The Complaint, The Court Should Transfer This Case To The United States District Court For The District Of Massachusetts On The Alternative Grounds Of Forum Non Conveniens

3D Systems' complaint should be dismissed under either Rule 12(b)(2) for lack of personal jurisdiction, Rule 12(b)(3) for improper venue, or Rule 12(b)(6) for failure to state a claim. In the alternative, because the convenience of litigating in this District is far outweighed by the convenience of litigating in the District of Massachusetts, the Court could transfer the case to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that

"[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  The decision whether to transfer a case under Section 1404(a) is committed to the district court's discretion. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  Because the decision whether to grant or deny a motion for transfer under Section 1404(a) in a patent infringement case does not involve substantive issues of patent law, Fourth Circuit law governs the analysis.  *See Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003) ("In reviewing a district court's ruling on a motion to transfer pursuant to § 1404(a), we apply the law of the regional circuit.").

The moving party seeking transfer under Section 1404(a) must show by a preponderance of the evidence that the "proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice."  *Figgie Intern., Inc. v. Destileria Serralles, Inc.*, 925 F. Supp. 411, 413 (D.S.C. 1996).  Transfer under Section 1404(a) requires a threshold determination that an action could have been brought in the transferee venue.  *See Selective Ins. Co. of South Carolina v. Schremmer*, 465 F. Supp. 2d 524, 527 (D.S.C. 2006).  If the proposed venue is proper, then the court will consider whether transfer is in the interest of justice and will service the convenience of the parties and witnesses.

Here, venue is proper in the District of Massachusetts under Section 28 U.S.C. § 1400(b) because (i) Formlabs resides there, (ii) a substantial part of the events or omissions giving rise to the claim could be argued to have occurred there, and (iii) Kickstarter consents to jurisdiction in

Massachusetts.[12]

Next, the Court must weigh the convenience of the parties and witnesses and the interest of justice by considering the following factors: (1) the convenience of the parties and witnesses, (2) the relative ease of access to sources of proof, (3) the cost of obtaining attendance of the witnesses, (4) the availability of process to compel attendance of unwilling witnesses, (5) the possibility of a view by the jury, (6) the interest in having local controversies decided at home, and (7) the interests of justice. *See Nexsen Pruett, LLC v. Westport Ins. Corp.*, C.A No. 3:10-895-JFA, 2010 WL 3169378, at *2 (D.S.C. Aug. 5, 2010); *Gerber v. Canfield*, 315 F. Supp. 1175, 1178-79 (D.S.C. 1970). The interests of justice can include a wide array of factors, including financial considerations and the location of documents necessary for litigation. *See Gerber v. Canfield*, 315 F. Supp. at 1178-79. Of these factors, "the convenience of expected witnesses is 'probably the most important factor, and the factor most frequently mentioned.'" *In*

---

[12] Although 3D Systems will no doubt oppose the present motion, if the Court is inclined to dismiss or transfer this case, Defendants assume that 3D Systems will consent to a transfer, rather than have the case dismissed outright. With 3D Systems' consent, transfer will undeniably be proper under the recently amended § 1404(a), which now permits transfer to any district to which "all parties consent." Even if 3D Systems opposes such transfer, transfer would still be proper. A noted scholar on federal practice has commented that the amendment to Section 1404(a) by the Federal Courts Jurisdiction and Venue Clarification Act of 2011 superseded the requirement in *Hoffman v. Blaski*, 363 U.S. 335 (1960), that a transferring court could only transfer to a venue with personal jurisdiction and "could not consider the defendant's consent to the transferee venue." James WM. Moore et al., Moore's Federal Practice § 111.12(1)(c) (3d ed. Supp. 2012). Further, a number of courts have taken a "common sense" approach to transfer in multi-defendant cases and permitted transfer even where one of the defendants was not subject to jurisdiction in the transferee court. *See, e.g.*, *Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 531 (7th Cir. 2002) (Posner, J.), *cert. denied*, 537 U.S. 1045 (2002) (motion to retransfer denied in a multi-defendant case consisting of 13 defendants even though Wisconsin district court lacked jurisdiction over all defendants. Transferee court considered transferor courts determination that there was no federal district in which all could be served; holding that "there is no absolute bar to the transfer of a multi-defendant suit to a district in which one of the defendants cannot be served."). Here, Massachusetts is the obvious jurisdiction for this dispute, Kickstarter consents to jurisdiction in Massachusetts, and as discussed herein, the forum non conveniens factors clearly favor transferring this dispute to the District of Massachusetts.

*re Genentech, Inc.*, 566 F.3d 338, 1343 (Fed. Cir. 2009). The Court has broad discretion in deciding whether to transfer a case. *See Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 277 (4th Cir. 2005). The Court's analysis in deciding motions brought under Section 1404(a) is guided by individualized, case-by-case considerations of convenience and fairness. *See Stewart Org., Inc.*, 487 U.S. at 29. Although a plaintiff's choice of forum is a factor generally to be considered, it does not have an absolute right to choice of forum. *See DeLay & Daniels, Inc. v. Allen M. Campbell Co.*, 71 F.R.D. 368, 371 (D.S.C. 1976). Moreover, the significance of the factor of plaintiff's choice has been considerably diminished under Section 1404(a). *Id.*

Here, the majority of documents and the majority of witnesses best positioned to provide information concerning the disputed product in this case are located in the District of Massachusetts. Formlabs employees with relevant knowledge about the Form 1 design, development, manufacture, and marketing are in Cambridge, Massachusetts. Additionally, because Formlabs is headquartered in Massachusetts, the vast majority of all data and documentary evidence concerning the Form 1 printer is located at Formlabs' Massachusetts headquarters, with data also stored on Formlabs' servers in Massachusetts. *See, e.g.*, *Southwest Equipment, Inc. v. Stoner & Co.*, C.A. No. 6:10-1765-HMH, 2010 WL 4484012 at *2 (D.S.C. Nov. 1, 2010) (transferring case to Massachusetts where sources of proof, including relevant documents, are located there); *Fairchild Semiconductor Corp. v. Nintendo Co.*, 810 F. Supp. 173 (D.S.C. 1992) (transferring case to Washington where a number of witnesses reside outside of South Carolina); *see also In re Genentech, Inc.*, 566 F.3d at 1345 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.") (internal quotation marks omitted); *Technical Concepts L.P. v. Zurn Indus., Inc.*, No. 02-5150,

2002 WL 31433408, at *3 (N.D. Ill. Oct. 31, 2002) ("[T]he location of the infringer's principal place of business is often the critical and controlling consideration because such suits often focus on the activities of the alleged infringer, its employees, and its documents, rather than upon those of the plaintiff.") (quotation omitted).[13]  In striking contrast, the witnesses relevant to the 3D Systems patent are geographically dispersed.  Indeed, all five inventors named on the asserted patent are listed as residents of California, not South Carolina.  *See* Compl. Ex. A at cover page. Furthermore, the documentary evidence relevant to the patent-in-suit will likely be geographically disbursed with the inventors.

Additional concerns regarding efficiency also militate in favor of transfer.  Because Defendants have already raised, *ante*, a substantial question of whether there exists personal jurisdiction over them in this District, this may require jurisdictional discovery if 3D Systems demands it and can demonstrate a need for it.  Therefore, even if determination of Defendants' jurisdictional motion is stayed, the parties will undergo potentially expensive jurisdictional discovery, and there will remain inherent uncertainty that the litigation of the case will have been a waste of the parties' and Court's resources if at the close of the case the Appeals Court determines that there was a lack of jurisdiction. A transfer to the District of Massachusetts would avoid this uncertainty.

Ultimately, this is a case centered in Massachusetts, concerning alleged infringement occurring as a result of decisions made by personnel employed in Cambridge, Massachusetts. The litigation of this case will depend on the production of witnesses and documents located

---

[13] Kickstarter is based in New York City, and all of its relevant documents are located in New York.  Besides the material posted by Formlabs on Kickstarter's website, Kickstarter, however, does not have documents concerning the design, development, manufacture, or marketing of the Form 1 printer.  Cohen Decl. at ¶ 23.

primarily in Massachusetts.  Thus balancing the convenience of the parties and witnesses and the interest of justice compels the transfer of this matter to the District of Massachusetts.

## IV.     CONCLUSION

For the foregoing reasons, Defendants Formlabs and Kickstarter respectfully request that the Court grant its motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), improper venue pursuant to Fed. R. Civ. P. 12(b)(3), or failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).   If the Court concludes that the matter should not be outright dismissed, in the alternative, Defendants respectfully request that the matter be transferred to the District of Massachusetts.

*Signatures on Following Page*

Respectfully submitted,


**DEFENDANTS FORMLABS, INC. and KICKSTARTER, INC.,**

By their undersigned attorneys,

/s/ Julianne Farnsworth
Julianne Farnsworth
Federal ID No. 4438
FARNSWORTH LAW FIRM LLC
Albemarle Point Center
176 Croghan Spur Road, Suite 203
Charleston, South Carolina 29407
Tel:  (843) 763-1289
Fax: (843) 763-1290
Email: Julianne@farnsworthlaw.com


Joshua M. Dalton
joshua.dalton@bingham.com
Lawrence T. Stanley, Jr)
lawrence.stanley@bingham.com
**BINGHAM MCCUTCHEN LLP**
One Federal Street
Boston, MA  02110-1726
(617) 951-8000

Robert C. Bertin
r.bertin@bingham.com
**BINGHAM MCCUTCHEN LLP**
2020 K Street, NW
Washington, DC  20006-1806
(202) 373-6000


February 25, 2013
Charleston, South Carolina